The clerk will call the case. 3-14-0-4-1-2 Bayview Loan Servicing, LLC added Lewis and Charles Jr. v. Jose Grazio Cornejo. Announced by Daniel Quaja. Mr. Quaja, you may proceed. May it please the court, my name is Daniel Quaja. I'm the attorney for the appellant defendants Jose Cornejo and Rocio Cornejo, who also happen to be the mortgagers and the homeowners in this action. Today we seek judicial review of three orders entered on behalf of the Circuit Court of Low County for the 12th Judicial Circuit. The first order, which I think sets the tone for this case, is the January 29, 2014 order granting the second motion to strike affirmative defenses in favor of J.P. Morgan Chase Beck. Under the current law, which is a liberal analysis, a 615 requires any possibility that the defendant could prevail. Under a 619, any set of facts that can entitle a defendant to relief. In this particular case, an answer was filed with factual allegations, a supporting deposition, a note filed by the plaintiff that was unendorsed, two motions to strike, which contained no attached note or reference within the possession, reference within the pleading of the blank endorsement of Cynthia Riley. So from this motion and that standpoint, the factual pleading and the allegations and the evidence should have easily overcome that motion at that stage in the proceeding. What's also equally problematic is that the January 29, 2014 order that was entered, the mortgage had been assigned two months prior to Bayview Loan Servicing LLC. J.P. Morgan had relinquished its legal capacity to foreclose but continued on the merits of the case even though the mortgage had been assigned. There's no dispute from the plaintiff and there's no dispute from the trial court judge that that occurred. Needless to say, that order was not vacated. An equally problematic issue with that is the court did not obtain jurisdiction over Bayview Loan Servicing. So how could they advocate an order that affected their interests? So I would argue that order should also be reversed based on those reasons. The second order that we're appealing is the March 12, 2014 order granting substitution of party plaintiff, Bayview Loan Servicing. This carries an abuse of discretion standard, but I do feel that that discretion was abused. The substitution was untimely. It was five months after the assignment, but three months after the second motion to strike affirmative defenses was granted in favor of J.P. Morgan. The motion to substitute party plaintiff also pleads the legal capacity that they're coming in as a servicer, but as they'll admit later, they're really the mortgagee of record. So I think it was improperly fled. You can be a mortgagee and not a servicer, can't you? Now, Bayview Loan Servicing versus Nelson distinguishes the two. Servicers collect payments. They send invoices. The IMFL does allow an agent trustee different capacities to foreclose, but they are distinguishable. But my question is one corporation can be built. Yes, that's true, but if they were the servicer on behalf of J.P. Morgan, I think there should have been an amended complaint filed, and they should have pleaded that capacity to state that as such. And that certainly didn't happen in this case. And the final order. Doesn't the assignment say that? I mean, the assignment is pretty clear that they assigned it, and then that's recorded, and it gets further, you know, in January of 2014. So it is public order that that is the capacity. December 10th, 2013 is when the assignment was transferred to Bayview. It was recorded then in January. So, I mean, that's when it becomes, I mean, you don't know. The language in the assignment, though, suggested that a sale occurred, I think, and that they bought the debt and that they became a mortgagee of record or the holder of the indebtedness pursuant to the IMFL. That would be my position on that. But I don't think this case hinges on the order of substitution of party plaintiff. I think that the second motion to strike affirmative defense, as it was granted, is problematic for various reasons. Let me ask you. All of this stuff you're complaining, how did this prejudice your clients in a real-world sense? Well, they're being foreclosed on. But who's doing the foreclosure? Why are they being foreclosed on? Well, it's true that there's an issue of payment as to the original lender, Washington Mutual. But this is about a valid transfer of the mortgage. It's about who's entitled to enforce the mortgage. Nobody should be able to come off the street and foreclose on a homeowner unless they have a legal interest in that note. So it is correct that there was a payment issue with the original lender. But I think the record suggests that J.P. Morgan certainly was not entitled to enforce this note. And if they were, there should have been a trial on the merits based on the factual allegations, which easily overcame that second motion to strike affirmative defenses. We're also appealing the April 30th, 2014 order granting summary judgment and the judgment of foreclosure and sale. I think there's a genuine issue. But you said there should have been a trial. Are you saying because your client disputes the merger between J.P. Morgan and Washington Mutual? I mean, the standard bank case says that when banks merge, there's no requirement that there be endorsement or assignment. They don't have to have that. So if J.P. Morgan and Washington Mutual merge, as the evidence here is, what is it that you're claiming? What is the trial? Well, first of all, Your Honor, you're referring to the purchase and assumption agreement, which was not introduced into the trial court. The recent Michigan Supreme Court case, Kim v. J.P. Morgan, has already established that J.P. Morgan did not acquire Washington Mutual by operation of law. They picked and chose certain parts of things that they wanted to buy. The purchase and assumption agreement, which was not introduced in this case, but I've seen it in others, is very vague. It doesn't describe what loans were acquired, if any. There's no inventory. There's no schedule. There's no list. But at the trial court, they proceeded on the blank endorsement. They didn't say that the loan was acquired by operation of law. Also, in the first couple of paragraphs of J.P. Morgan v. Kim, they mentioned in that case that the FDIC did not pursue the provision of the 1821 U.S.C., which would not require an assignment or an endorsement to transfer the instrument. So in other words, they need an endorsement or an assignment from the FDIC. I have seen cases below at the trial court that have endorsements and assignments from the FDIC to J.P. Morgan. There's no reference of any assignment or endorsement from the FDIC here. The case I cited, J.P. Morgan v. Butler, has also language in that case that they need it. So I think it's – we can't assume that the loan was acquired in the Washington Mutual Purchase and Assumption Agreement. They certainly did not elect to proceed, but that was the basis of their foreclosure. This whole case is about the endorsement. Well, who's the mortgager now? Who holds the mortgage? Well, according to them, it's J.P. Morgan Servicing, LLC. Well, who owns it according to you? Well, Your Honor, in the loss mitigation affidavit that was attached to the motion – or was not attached to the motion for summary judgment, I objected to that in my response. They didn't attach it. They produced it after hearing. The loss mitigation affidavit actually says owner of the loan, Federal Home Loan Corporation. That's a fact that, you know, was not discovered until later. I couldn't respond to it in my motion for summary judgment because the loss mitigation affidavit was not attached. So even there, they're saying the Federal Home Mortgage Corporation owns the loan. So there's so many moving parts to this case, with the endorsement, with the untimely assignment, even the admission in the loss mitigation affidavit, that standing is very much in doubt. You know, two cases are instructive if we are to believe that the endorsement is relevant here, and that's Gilbert's and that's Baby v. Nelson. Baby v. Nelson establishes the premise that if you're not the original mortgagee, you need a bailout assignment or endorsement. The Gilbert's case discusses having a claimed interest in the note and supporting documentation on hand when filing suit. In this particular case, there obviously was not an endorsement on the note of filing. The defendant does not hang on that one set of facts to support their factual allegations, but it's an uncontroverted fact. It's also uncontroverted that Baby was signed this loan. A motion was advocated in J.P. Morgan's interest, and Baby was untimely substituted. The deposition, which was attached to the answer in this case, has some very relevant facts that also need to be closely looked at by this court. The one is Cynthia Riley testifies. She was laid off November 11, 2006 from the secondary delivery operations for Washington Mutual. That facility in Jacksonville, Florida, was closed. It was transferred to Florence, South Carolina. She said she didn't work there. She didn't supervise those individuals. The mortgage in this case has a return to address of Florence, South Carolina, which is the earliest endorsement would have occurred. However, she also mentions that endorsements on the notes are applied within a matter of days after closing. Someone buys a house. It closes. They receive the note, and they stamp it. So how is it that this case, which was filed, contained an unendorsed note of filing? When they filed their complaint to foreclose, we filed the affirmative defense of standing. Two motions to strike were filed in this case, August and September. Neither motion contained a reference within the pleading to being in possession of the blank endorsement of Cynthia Riley. Neither contained an attached note. And this is a very important fact. As an attorney who has dozens of cases against Cadillus and other firms, they always put their best foot forward. If they were in possession of the blank endorsement of Cynthia Riley, they certainly would have discussed it in their first motion to strike affirmative defenses. It was completely absent in that motion. The second motion to strike affirmative defenses, if you read it, there are some glaring differences. It has an attached note and a lengthy analysis of the unaffirmative commercial code and the transferring effect of Cynthia Riley. I think the second motion to strike affirmative defenses is where this case begins and ends. I would like to know. If we grant you the relief you're seeking and we reinstate your affirmative defenses, what is it exactly then do you gain? I mean, I guess, you know, what benefit is it for those affirmative defenses being reinstated? If you go and have a full hearing, are you really saying that your clients didn't owe these people, these entities, the money for their mortgage? I mean, I guess I'm trying to get at the bottom line here. The bottom line is in order to foreclose on a homeowner, the transfer of the indebtedness has to be lawful. If it's not lawful, then the law is chaotic and has no effect. J.P. Morgan was in serious question of whether they had the right to foreclose on my clients in this case. Furthermore, the baby loan servicing transfer is also problematic for jurisdictional issues, for lack of capacity issues. And I should also note that, you know, because the authority of this endorsement is at issue, I cited two cases which I think this Court should look very closely at. McCracken v. Mortgage Electronic Registration Systems, 2013 case, Rhode Island Supreme Court. The other case, Culhane v. Royal Loan Services in Nebraska, United States Courts of Appeals for the First District. They have both carved out an exception for homeowners to challenge an assignment where the foreclosing entity lacked the authority to foreclose. They noted in that case that homeowners are not challenging the contractual rights of two parties, but rather they're asserting their own rights to prevent unlawful foreclosure. The second District Blasphemy case paints too light of a brush. It deals with the pooling and servicing agreement case, where the defendant did try to challenge those contractual provisions. So the timing of the endorsement is at issue in this case. The authority of the endorsement is at issue in this case. Baby loan servicing's capacity and the order being wrongfully hindered is at issue. These issues never should have gotten beyond the motion to strike. Didn't Bayview appear in the trial court? Did what? At some point, Bayview appeared in the trial court. They filed a motion to substitute party plaintiff March 12th, 2014 at summary judgment, which is three months after the second motion to strike. Okay, but I'm having a hard time understanding part of your argument about the court doesn't have jurisdiction over it. On December 10th. They talked to the courtroom and filed a pleading that you give the court jurisdiction. But the problem is that when the second motion to strike was entered and the case was proceeded on the merits, J.P. Morgan did not have an interest in the case anymore. The mortgage had been assigned two months prior to Bayview. So the court adjudicated a motion on its merits, essentially when Bayview had the interest in the case but had not obtained jurisdiction over the case. So the lower court entered the second motion to strike from the inferences in favor of J.P. Morgan, but the real holder of the debt because of the two months prior assignment was Bayview. A motion was adjudicated and entered on behalf of their interest. I think there is a jurisdictional argument there. But even if there isn't, J.P. Morgan clearly lacked the capacity to foreclose pursuant to the IMFL. They relinquished their capacity as the mortgagee. And since I see the court has directed many questions regarding substitution, they raised 521,000 AP abatement statute and 52407, which allows joiner of necessary parties. I think both of those statutes apply to timely substitutions. The substitution in this case was clearly not timely. And I would direct the court to Bayview v. Nelson, where the plaintiff who started that action, Bayview Loan Servicing, was the improper party. The correct party was the partnership. And the court noted, in this case, since Bayview is not the correct legal entity to have brought this action, the trial court entry of summary judgment and orders of foreclosure and sale were improper as a matter of law. And I think that second motion to strike that was granted in favor of J.P. Morgan was improper as a matter of law and should be reversed for that reason alone. Both of the statutes cited by the plaintiff, neither of which have any foreclosure law to support it, are both regarding timely substitutions. And the substitution was not timely. Motions were filed. And I can also tell the court that this Bayview assignment, I've seen in two instances at the trial court, where J.P. Morgan continued on the case and Bayview had assigned the loan months prior. In two of my cases, the Honorable Judge Mullen denied the motion for summary judgment based on that. The Honorable Judge Ramon G. Malley-McHenry granted the motion for summary judgment. Same factual scenario as this. There's a split and the judges down below don't know what to do about these substitutions, particularly when the non-interested party to the proceedings is filing motions and getting relief granted. So I think the lower courts definitely need direction on this issue because it's problematic and it happens quite often. I personally have seen at least two instances now with this factual scenario with the Bayview assignment. In conclusion, I would argue that there's multiple issues of fact. The very liberal fact-cleaning analysis of a 619, that there's no possibility that a vendor could prevail, or any set of facts that's entitled in defendant relief. We overcame those by way of plaintiff's own pleadings, by way of our own pleadings, by the supporting deposition, by the assignment that was executed two months prior. There's multiple issues in this case that doesn't even require us getting to the summary judgment. But even at that point, I think there's a genuine issue of material fact as to the plaintiff's ability to foreclose. Thank you. Mr. Manetti? Good afternoon, Your Honors. May it please the Court. Counsel. My name is Lou Manetti. I represent Plaintiff Eppley Bayview Loan Servicing, LLC. Your Honors, really the heart of this case, defendant's case, here amounts to burden shifting, plain and simple. Defendant stated in court today, counsel stated, that no one should be able to foreclose without an interest in the loan, and no one should be able to foreclose unless the transfer was lawful. That's defendant's burden to show, but that's not the case. Defendant's efforts here merely amounts to burden shifting from the defendants to show lack of standing to the plaintiffs. They attempt to shift the burden in their affirmative defense where they insist that it's the plaintiffs that need to bring forth documentation and evidence of standing. They try and shift the burden in their argument where they say statements such as, on the original note, may have been unauthorized. These are inconclusive, speculative statements that are insufficient to show that the plaintiff affirmatively lacked standing. Defendants did not meet their burden to show lack of standing. Their evidence amounted to nothing more than speculation. That doesn't logically follow from the facts here. Plaintiff established, and furthermore, even though it wasn't its burden, plaintiff established its standing in the record. Defendants failed to meet their burden to plead and prove lack of standing. It's defendant's burden to plead and prove lack of standing. The Illinois Supreme Court has stated in response to the suggestion that the plaintiff must come forward with some proof or documentation that they have standing, this is precisely opposite of what the law demands. Because standing is an affirmative defense, it's that it is not, plaintiff is not required to plead and prove that standing is proper. And here defendants failed to meet their burden. Their brief tellingly characterizes their defense in these inconclusive terms, which have been carried over to argument today the defense have made. They state in their brief that plaintiff's interest in the note is in question, and that the failure of the plaintiff to immediately trumpet that it had the original note with the endorsement raises questions, and that the endorsement may have been unauthorized. And they echo these inconclusive statements today by saying that standing is very much in doubt. This does not meet their burden to show that plaintiff lacked standing, and their basis for this speculation is logically inconsistent. The first argument is that because plaintiff produced the original note with an endorsement on it, that because the attachment to the complaint of the note didn't have an endorsement, that is, it was an earlier version of the note, that simply because of this, it amounted to the admission that plaintiff didn't have the note, or the note was endorsed later. But the plaintiff wasn't required to attach a copy of the note to the complaint with an endorsement. The requirement that a plaintiff in a foreclosure action attach a copy of the note as it currently exists is new. It's only been around since May 1, 2013, and with the creation of Illinois Supreme Court Rule 113. It's a more specific requirement that didn't exist when this case was filed. In fact, the commentary to that rule states that it's a new requirement to avoid motion practice and delay. Before then, the IMFL did not differentiate between what version of the note you had to attach to the complaint. For example, whether you had to attach a copy of the note immediately at origination, before any allonges or endorsements were affixed to it, or on the other hand, a version of the note as it currently existed right before filing. So there's no admission that plaintiff didn't have the note or the note wasn't endorsed at filing. Defendant's second argument is that plaintiff didn't mention in its initial 615 motion to strike defendant's first iteration of their defense, didn't mention that they possessed the note. But again, nothing can be extrapolated from this against plaintiff. Plaintiff was not required to argue in a pure section 615 motion to strike the defense that it had possession of the original note. And this is particularly true given the substance of that first defense. Defendants merely insisted that plaintiff hadn't established documentation, plaintiff hadn't attached an assignment or a transfer to their complaint, and somehow this raised standing issues. Plaintiff, in facing that defense, properly moved to strike purely under 615. It didn't try to offer any affirmative matter to negate the defense. In fact, additional proof would have been improper in a pure 615 defense. And it doesn't logically follow that in a pure 615 defense that fails to state that, oh, the plaintiff does have the original note. It doesn't follow that because that argument wasn't made that they didn't have it. It doesn't establish a fact. Additionally, despite defendant's claims, the timing here is not significant. Plaintiff, at the initial hearing for that motion to strike, brought the original note in court. That was the first time of many times plaintiff brought the original note in court. And the Supreme Court has said that raising proof or a plaintiff raising argument why it does have standing for the first time in response to a challenge from defendants is entirely proper. Plaintiffs don't have to preemptively argue why it has standing. It's not their burden. It's defendant's burden to plead and prove. So neither attaching a copy of the unendorsed note to the complaint or filing a pure 615 motion that didn't state that plaintiff had the original note dictates anything about the conclusion defendants want to draw. That is, there was issues with the endorsement or there was issues with the original note or plaintiff's standing. And the defense ultimately just facially insists that plaintiff prove its own standing. The first line of the defense confirms this. They say, plaintiff doesn't have standing before this court as it failed to provide evidence that it was the owner of the indebtedness. They later state that plaintiff failed to include exhibits to suggest ownership and failed to provide reliable evidence of standing. They conclude in their defense, their amended defense, that without a properly endorsed note or a valid assignment at the time of the original filing, plaintiff has not demonstrated an ability to proceed. As the Illinois Supreme Court said, this is precisely opposite of what the law demands. Excuse me. Defendants failed to meet their burden to show that plaintiff lacked standing. And as a result, their defense was properly rejected by the trial court. Additionally, defendants can't meet their burden to show that plaintiff lacked standing because plaintiff established it in the record, most obviously by producing the original note in open court multiple times. Under the Uniform Commercial Code, possession of a promissory note is prima facie evidence of ownership. And once a note is endorsed in blank, you can negotiate that instrument by possession alone. And a recent case which discusses the impact of a plaintiff mortgagee producing the original note in open court, acknowledging the protection that's given to note holders, people that have possession of the note, states, Plaintiff, therefore, is the holder of the note. Any issue regarding the manner in which plaintiff acquired the note does not affect its undisputed status as holder. I'd also note that negotiable instruments, promissory notes, as commercial paper, are self-authenticating under the Illinois Rules of Evidence. Back to that case that was talking about the impact of a plaintiff producing the original note. It correctly noted that because the defendants were arguing that there was something wrong with the manner in which the plaintiff got the note, that it impacted the plaintiff's standing. The court said because its defendants claimed that something happened regarding how plaintiff got the note, it was defendants' burden to produce evidence that some other entity, as Your Honor mentioned, some other entity was the true holder. Regarding the original note further, nothing about the attached transcripts from a Florida State Court case invalidates the endorsement on the original note. The defendant here acknowledges, at least on some level, that the Uniform Commercial Code does give plaintiff at least one avenue, there are others, but at least one avenue towards standing here, as he tries very hard to invalidate the endorsement on the note. Under the Uniform Commercial Code, there's a multitude of ways that plaintiff can, or things which weigh in plaintiff's favor here. Instruments can be signed by a stamp, that stamp can be authorized to be used by other persons who aren't that specific person, and even if a stamp or signature is unauthorized, it can be ratified later. For all these things, the deposition transcript of Ms. Riley, the defendant attached to his defense, fails to establish that these established and proper practices under the UCC were not followed, particularly in this case. Ms. Riley does not state that she stopped working for Washington Mutual a year before the loaners originated. She, in fact, says she has dual roles. She's a department manager and a vice president that both began in June 2004. She says she stopped being a department manager in November 2006, but then she says later in that deposition she worked for Washington Mutual for a year after that date, which would safely take her through the origination of the loan. She never states that she was not a vice president or enjoyed that role. She never states that people used her stamp without authority. In fact, she states explicitly in her deposition that she doesn't believe her stamp was ever used without authority. So there's nothing in defendants' offering here that would invalidate the endorsement. And ultimately, even if everything defendants say about the endorsement on the note is correct, it still wouldn't establish that plaintiff lacked standing under the Uniform Commercial Code because plaintiff would still have avenues to enforce the instrument under the Uniform Commercial Code. Under the UCC, a person entitled to enforce is not only a holder, but a nonholder in possession with the rights of a holder. So defendants, even if they showed or invalidated the endorsement, plaintiff obviously established possession of the note four times in the trial court. So simply invalidating the endorsement wouldn't get defendants where they need to go. It wouldn't show that plaintiff has no avenue, specifically as a nonholder in possession with the rights of a holder under the Uniform Commercial Code. And again, while the case law they cite about challenging endorsements, it only gets them at most that you can challenge an endorsement or an assignment if it would completely void the transfer. Again, that wouldn't happen here. Under the Uniform Commercial Code, not only can holders enforce instruments, promissory notes, but nonholders in possession can, too. Additionally, there's ample support in recent case law for the proposition that plaintiff merely attaching a copy of the note actually showed it standing here. The mere fact that a copy of the note is attached to the complaint is prima facie evidence that the plaintiff owns the note. And for the past 25 years, the foreclosure law has not required any specific documentation demonstrating that plaintiff owns the note or the right to foreclose except the note in mortgage. This has played out consistently in case after case after case. In Garner v. Rolestone, plaintiff produced an assignment that was executed after the complaint was filed. In Standard Bank & Trust Company v. Madonia, plaintiff didn't attach any documentation showing its interest in the loan and no documentation was forthcoming until summary judgment. More recently, in City Mortgage v. Moran, the plaintiff attached an assignment to its complaint, not to itself, but to MERS as nominee for itself. In each of these cases consistently, the court rules three things. One, it's not the plaintiff's burden to establish standing via its complaint. And two, the defendants pointing out these perceived facial deficiencies don't show, don't meet their burden. They don't show that plaintiff lacked standing. They merely question. They merely speculate. And three, that merely attaching a copy of the note to the complaint actually showed that plaintiff had standing. The defense was inconclusive and speculative, and it's merely trying to shift the burden to plaintiff. They have no hard evidence here, just questions. Plaintiff's standing is in doubt. It's questionable. That doesn't meet their burden to affirmatively show that plaintiff lacks standing. And in any event, plaintiff demonstrated it, produced the original note multiple times. There's nothing defendants showed that would defeat the ability of plaintiff to enforce it under the Uniform Commercial Code. And to the extent the defendant relies on the Gilbert case from the Second District, that case is easily distinguishable. There's no issue here regarding a facial assignment that showed that the plaintiff might not have had standing on the date of the original filing. There was no original note produced in Gilbert. There was no affidavit as here. There was no affidavit in Gilbert swearing that two things each would give standing. One, that the plaintiff is the servicer of the loan. And Your Honor's correct with servicers. It's explicitly stated in City Mortgage v. Moran. Servicers have the right to foreclose. They are mortgagees under the IMFL. And the affidavit in this case also explicitly swore that plaintiff had possession of the original note, as was demonstrated multiple times in court. None of those facts are present in Gilbert. And that case is readily distinguishable. Regarding defendant's point that the order striking his defenses with prejudice was void because plaintiff later substituted to Bayview Loan Servicing LLC. As pointed out by Plaintiff in its brief, a change of possession, a transfer of interest does not cause an action to abate. It could be continued under Section 2108A of the code. And really, however defendant tries to cast it, he tries to say that J.P. Morton didn't have an interest anymore. It should have been Bayview. However he tries to cast it, he's really talking about standing. He's really trying to say there was a potential standing issue when that order was entered. It's crystal clear, however, from the Illinois Supreme Court that standing issues do not implicate a court's jurisdiction. So that order absolutely would not be void. This is shown in, most recently, the LVMV v. Trice case, where the Supreme Court says explicitly, orders are only void if jurisdictional issues are raised, which wasn't the case here. The Illinois Supreme Court also in LeBron v. Gottlieb Memorial Hospital clearly says, issues of standing don't implicate a court's subject matter jurisdiction. And that's the whole purpose of Section 1008 of the code, is that the action doesn't abate. Parties can come in and out of the cases as required to continue on the case, before or after judgment. So counsel is incorrect in his assertion that the order striking his defense with prejudice was void. It certainly was not. Additionally, it didn't grant substantive relief to the plaintiff. It struck a pleading as it currently existed, which, given the arguments made in the motion to strike, it was really immaterial whether J.P. Morgan or Bayview was the plaintiff. The fact remained that the affirmative defense was not well pleaded. It wasn't a recognizable defense. So unless your honors have any questions, for the foregoing reasons, the judgment of the circuit court should be affirmed. Thank you. Thank you. Rebuttal? Counsel has mentioned throughout his argument the burden. However, because the crux of this case really lies on the second motion to strike affirmative defenses, defendants' only burden was showing any possibility that they could prevail on the merits. Deposition was submitted outlining Riley's employment history. A note was filed that was unendorsed. Two first motions to strike were filed without a note attached, without the reference in the pleading of being in possession of the endorsement. An amended answer was filed with well-pleaded allegations. And although he mentions that a note was produced four times, I was lucky enough to see it produced the first time in court. I reviewed it, and from a lay person's perspective, I thought the endorsement was recently executed. I found it to be fresh, and I don't believe it's legitimate. And I think that's a big part of this case is the timing and the authority of the endorsement, because Washington Mutual ceased to exist since the latter half of 2008. And nobody can authorize that endorsement except Washington Mutual and their authorized officer. So when counsel talks about nonholder with rights of a holder, you still have to show assignment in one way or another. If they had submitted the purchase and assumption agreement, that may have been evidence to support nonholder rights. But they didn't submit that agreement at trial. They didn't say the loan was acquired in the purchase and assumption agreement. The second motion to strike is the most important part of this case. The other things, you know, the defendants were prematurely cut off from litigation. And while counsel keeps talking about burden, we accept that the burden is on defendants. The standing is an affirmative defense. But the prima facie case is presentment of the note. However, just like in the Gilbert case where the note identified WMC as a mortgage and Deutsche Bank being the plaintiff, we have a situation here that the note was filed with this court, was addressed Washington Mutual as a mortgagee and J.P. Morgan as a plaintiff. That's problematic. With respect to the jurisdictional issue, personal jurisdiction, at least, is a void order if you don't obtain service over a party. The second motion to strike affirmative defenses granted in favor of J.P. Morgan on January 29, 2014, was on behalf of a non-interested party to proceedings. This was Bayview's case. They acquired the loan two months prior. How can a circuit court enter an order on behalf of a party that's not even part of the case when it's their interest? Let's talk about that one second. I mean, because of these transfers, and somebody's in litigation, you're a week away from trial. And it turns out that this bank, you know, the people at the home office somewhere, transferred that mortgage to somebody else. All right? They bundled a bunch of mortgages and they sold them off. But it's a week before trial. By the time the paperwork gets from New York City to Omaha or wherever it is, or Peoria or Ottawa, the case goes to trial and there's a judgment for the plaintiff in that case. And then a month later, 30 days later, 25 days later, they come in and they say, we have a motion for you just to amend the judgment because actually that mortgage was held by so-and-so, and we just want you to amend the judgment order to reflect that the judgment is actually in favor of somebody who was never even there during the trial. What's wrong with that? Substitution has to be timely, Your Honor. I think the Bayview case is the one that's instructive. Wrong party started the legal proceedings in that case, Bayview, when the true owner was a partnership. The court ruled that all orders entered were improper as a matter of law. How can J.P. Morgan proceed on a case when they have relinquished their legal interest to foreclose? If that's the case, then anybody can come in at any time. I think these statutes are designed for timely substitutions. I don't disagree that Bayview could come in 6 months, 12 months, 18 months later if nothing happened during that period of time, but they went and adjudicated a second motion to strike, or J.P. Morgan adjudicated a second motion to strike affirmative defenses, and they lacked the legal capacity to foreclose pursuant to the IMFL. They were not the mortgagee. I think that order should be vacated either pursuant to the IMFL, because they lacked the legal capacity, or that order should be vacated because there's a jurisdictional issue. The court did not obtain jurisdiction over Bayview until March 12, 2014. You know, this case is riddled with issues that should have easily overcome that motion to strike. Deposition attacks, unendorsed note, two motions to strike that created very strong inference. They weren't in possession of the endorsement. Well-cluded factual allegations that were several pages. I mean, what evidence does a defendant have to put forward to overcome a motion to strike at the trial court? These motions to strike are being treated like motions for summary judgment, and defendants are being prematurely cut out from litigation. This case ended far earlier than it should have, and, you know, the issues continued in this case to the end. As I noticed, as I've mentioned, the loss mitigation affidavit that's attached identifies the owner of the loan as Federal Home Loan Mortgage Corporation. Let me ask you this. This was resolved on summary judgment, ultimately, right? Well- The final order was a summary judgment. When I appealed for the case, Your Honor? Yes, I appealed for the summary judgment on 03-04. I understand. Well, when it comes to summary judgment time, unlike pleading time, you've got to have evidence, not suggestions. In other words, the evidence to be, for example, you've got to have evidence to show that the transfer wasn't valid. Once the motion to strike is granted with prejudice, I was cut off from that portion of the argument. The trial court, and I have notes from the trial court, I have all the records introduced. The trial court never analyzed the deposition, never inquired as to the motions to strike that were filed. There wasn't a lot of questions from the trial court at all. The summary judgment in the general mission material fact would only deal now with Bayview Loan Servicing, LLC, and their legal capacity to foreclose because defendants were cut off from asserting the standing issue as to J.P. Morgan, which is well-founded, had an admissible deposition, and a number of pleadings for the court to examine. We never got to that point. We were cut off early. So when you say the evidence supporting that summary judgment, well, the evidence can only be provided based on what was left to litigate, which was Bayview's capacity. We were cut off from the rest early on. And, you know, you can see the trial court's analysis. I mean, it's uncontroverted that the note was unendorsed, that the wrong party received relief on the second motion to strike. I mean, these are all unconverted facts. So I think this record as a whole is replete with reasons why it should be reversed. And it's not for one singular issue. It's, you know, the motion to strike being granted prematurely. It's the wrong party receiving the second motion to strike affirmative defense as being granted in their favor. There's a lawsuit. So I would ask that the orders of January 29th, 2014, March 12th, 2014, and April 30th, 2014, be reversed and remanded to the trial court. Thank you both for your arguments here today. This matter will be taken under advisement, and a written decision will be issued to you as soon as possible. With that, we'll take a short recess for panel discussion.